803 S.E.2d 508

**Patricia S. REED, Commissioner, West Virginia Division of Motor Vehicles, Petitioner**

v.

**Frederick STAFFILENO, Respondent**

**No. 16-0487**

Supreme Court of Appeals of West Virginia.

Submitted: April 25, 2017

Filed: May 5, 2017

---

Patrick Morrisey, Attorney General, Elaine L. Skorich, Assistant Attorney General, Charleston, West Virginia, Attorneys for Petitioner

Marc B. Chernenko, William E. Watson & Associates, Wellsburg, West Virginia, Attorney for Respondent

Davis, Justice:

Patricia S. Reed, Commissioner of the West Virginia Division of Motor Vehicles (hereinafter "DMV"), appeals from a final order of the Circuit Court of Brooke County. The circuit court's order reversed the decision of the Office of Administrative Hearings (hereinafter "OAH") that had affirmed DMV's revocation of the driver's license of the Respondent, Frederick Staffileno (hereinafter "Mr. Staffileno"). In this appeal, DMV contends that the circuit court committed error in concluding that (1) OAH's delay in issuing its decision was prejudicial to Mr. Staffileno, (2) DMV failed to prove that Mr. Staffileno knew the person driving his car was under the influence of alcohol, and (3) a new hearing examiner could not decide the case based solely upon a review of the record. After a careful review of the briefs, the record submitted on appeal, the applicable law, and listening to the argument of the parties, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The record indicates that on August 29, 2011, at around 9:20 p.m., State Trooper K. Castle (hereinafter "Trooper Castle") was on routine patrol on Route 2, in Brooke County, when he observed a vehicle being driven with the driver's side headlight out. Trooper Cas-

tle stopped the vehicle as a result of the headlight being out. Upon engaging the driver of the vehicle, Tiffany Haynes, Trooper Castle detected the odor of alcohol on her and observed that her eyes were bloodshot and glassy. After Ms. Haynes admitted to drinking two beers, Trooper Castle subjected her to field sobriety tests. Ms. Haynes passed the one-leg stand test, but failed the horizontal gaze nystagmus test and the walk-and-turn test. Trooper Castle then administered the preliminary breath test, which Ms. Haynes also failed by registering a blood-alcohol content of .167 percent Trooper Castle thereafter placed Ms. Haynes under arrest for DUI.

Trooper Castle also at some point approached the passenger side window and engaged Mr. Staffileno. Trooper Castle detected the odor of alcohol emitting from Mr. Staffileno as he spoke with him. Mr. Staffileno informed Trooper Castle that he and Ms. Haynes had been drinking at a bar, and that he allowed her to drive his vehicle because he had drunk more than she had. Trooper Castle thereafter placed Mr. Staffileno under arrest for knowingly permitting his vehicle to be driven by Ms. Haynes while she was under the influence of alcohol.

Subsequent to Mr. Staffileno's arrest, DMV issued an order, dated September 15, 2011, revoking his driver's license for a period of ninety days. Mr. Staffileno requested an administrative hearing to contest the revocation.[1] An administrative hearing was held on August 1, 2012, before hearing examiner Erica Tamburin. Evidence was presented at the hearing by Mr. Staffileno, who was represented by counsel, and Trooper Castle. The hearing examiner resigned, at some point after the hearing, without rendering a decision. A new hearing examiner, William L. Bands, was assigned to the case. Mr. Bands rendered a decision on October 18, 2015, that upheld the revocation of Mr. Staffileno's driver's license. On the same day, the Chief Hearing Examiner entered an order adopting Mr. Bands' decision.

Mr. Staffileno appealed the decision of OAH to the circuit court. In the appeal, Mr. Staffileno contended that the decision of OAH should be reversed because of a delay of more than three years in issuing the decision, DMV failed to prove that he knew Ms. Haynes was intoxicated, and the new hearing examiner could not decide the case based solely upon a review of the record. The circuit court agreed with all three of Mr. Staffileno's contentions and reversed the decision of OAH. This appeal by DMV followed.

## II.

### STANDARD OF REVIEW

Our review of a circuit court's decision involving an administrative agency order proceeds under the standard announced in Syllabus point 1 of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996):

On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Moreover, "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. pt. 2, *Muscatell*, 196 W.Va. 588, 474 S.E.2d 518. With these standards in mind, we proceed to the parties' arguments.

## III.

### DISCUSSION

DMV contends that the circuit court erred in finding that the delay of over three years in issuing a final decision by OAH was prejudicial to Mr. Staffileno.[2] DMV argues that

---

1. The revocation has been stayed throughout the proceedings.

2. The DMV contends that it was prejudiced because of language in the circuit court's order that held it responsible for the delay. Although the circuit court's order does in fact refer to DMV

Mr. Staffileno was allowed to present all his evidence during the hearing; therefore, the fact that the final order was not entered until over three years after the hearing concluded is not in and of itself prejudicial. According to DMV, under the decision in *Miller v. Moredock*, 229 W.Va. 66, 726 S.E.2d 34 (2011), "relief for delay is only warranted if a driver's ability to defend himself is compromised." *Miller* does not stand for such a proposition.

As a preliminary matter, we will note that the law governing revocation proceedings before OAH does not impose time constraints on the issuance of decisions by that agency following an administrative hearing. *See* W. Va. Code § 17C-5C-1 *et seq.* and 105 CSR § 1-1 *et seq.* However, this Court has long recognized the constitutional mandate that " 'justice shall be administered without … delay.' W. Va. Const. Art. III, § 17." *Frantz v. Palmer*, 211 W.Va. 188, 192, 564 S.E.2d 398, 402 (2001). We further have recognized that "administrative agencies performing quasi-judicial functions have an affirmative duty to dispose promptly of matters properly submitted." Syl. pt. 7, in part, *Allen v. State Human Rights Comm'n*, 174 W.Va. 139, 324 S.E.2d 99 (1984).

Turning now to the decision in *Miller*, we observe that this was an appeal by DMV from an order of the circuit court that had reversed its suspension of the Respondent's driver's license for DUI.[3] The circuit court in *Miller* reversed the decision because of a seventeen month delay between the administrative hearing and entry of the final order revoking the Respondent's driver's license. The circuit court determined that such a delay was "presumptively" prejudicial. On appeal, DMV contended "that the circuit court failed to find that [Respondent] suffered any actual prejudice as a result of the delay and that, absent such a finding, the revocation order should have been affirmed." *Miller*, 229 W.Va. at 70, 726 S.E.2d at 38. We agreed with DMV in *Miller* that the circuit court erred in using a presumption of prejudice standard to reverse the revocation order. The decision in *Miller* set out the following standard for determining prejudice from a delay in the issuance of a revocation order after a hearing has been held:

> On appeal to the circuit court from an order revoking a party's license to operate a motor vehicle in this State, when the party asserts that his constitutional right to due process has been violated by a delay in the issuance of the revocation order by the Commissioner of the Division of Motor Vehicles, he must demonstrate that he has suffered actual and substantial prejudice as a result of the delay. Once actual and substantial prejudice from the delay has been proven, the circuit court must then balance the resulting prejudice against the reasons for the delay.[4]

Syl. pt. 5, *Miller*, 229 W.Va. 66, 726 S.E.2d 34 (footnote added).

Our holding in Syllabus point 5 of *Miller* is dispositive of the resolution of the issue in this case. However, because *Miller* was decided under the old administrative system that was controlled by DMV, we take this opportunity to modify Syllabus point 5 of *Miller* to reflect the current administrative system under OAH. Consequently, we now hold that on appeal to the circuit court from an order of the Office of Administrative Hearings affirming the revocation of a par-

---

and OAH as a single entity in causing the delay, we find this to be harmless verbiage. In fact, the circuit court, in an amended order, clarified that it was aware that DMV and OAH were separate entities. In that amended order, the circuit court made clear that its findings regarding the prejudice caused to Mr. Staffileno remained. It should be pointed out that, prior to 2010, the administrative hearing process was under the control of DMV. *See* W. Va. Code § 17C-5C-5(a) (Repl. Vol. 2013) (2010) (recognizing the "transition of the administrative hearing process from the Division of Motor Vehicles to the Office of Administrative Hearings"). In 2010, "[t]he Office of Administrative Hearings [was] created as a separate operat-

ing agency within the Department of Transportation." W. Va. Code § 17C-5C-1(a) (2010) (Repl. Vol. 2013).

**3.** The decision in *Miller* was decided under the old system when the administrative procedure was under the control of DMV.

**4.** We reversed the circuit court's order in *Miller* and remanded the case with instructions to the circuit court to take evidence on the issue of prejudice from the seventeen month delay in issuing a decision.

ty's license to operate a motor vehicle in this State, when the party asserts that his or her constitutional right to due process has been violated by a delay in the issuance of the order by the Office of Administrative Hearings, the party must demonstrate that he or she has suffered actual and substantial prejudice as a result of the delay. Once actual and substantial prejudice from the delay has been proven, the circuit court must then balance the resulting prejudice against the reasons for the delay.

█ As previously stated, DMV contends that, under *Miller*, Mr. Staffileno is entitled to relief only if he establishes that his ability to defend himself was compromised. Although the decision in *Miller* did not discuss the nature of the prejudice that must be shown, we have little hesitancy in rejecting the standard that DMV seeks to impose. DMV seeks to apply a standard that is appropriate when a party challenges a pre-hearing delay. The issue of a party's ability to mount a defense is relevant when there is a substantial delay in holding an actual hearing. *See Meadows v. Reed*, No. 14-0138, 2015 WL 1588462 (W. Va. Mar. 16, 2015) (memorandum decision) (determining four year delay before hearing was prejudicial to driver's ability to defend himself); *Reed v. Conniff*, 236 W.Va. 300, 779 S.E.2d 568 (2015) (concluding four year delay before hearing did not prevent driver from mounting a defense); *Petry v. Stump*, 219 W.Va. 197, 632 S.E.2d 353 (2006) (ruling driver prejudiced by six year delay in holding a rehearing); *In re Petition of Donley*, 217 W.Va. 449, 618 S.E.2d 458 (2005) (finding no prejudice from three year delay in holding hearing); *Johnson v. State Dep't of Motor Vehicles*, 173 W.Va. 565, 318 S.E.2d 616 (1984) (observing no prejudice from pre-hearing delay). However, the decision in *Miller* did not involve a pre-hearing delay. The delay in *Miller* was a post-hearing delay in the issuance of a final order. In the context of a delay in issuing an order after a hearing has been held, the issue of prejudice necessarily involves prejudice to a party that occurred after the hearing was held. As a general matter, under *Miller* the standard for post-hearing prejudice will ordinarily involve some type of change in a party's circumstances that may have been substantially prejudiced because of the delay in issuing a final order by OAH.

In the instant case, the circuit court found that Mr. Staffileno "suffered substantial and actual prejudice as a result of the delay in this matter and his due process rights have been violated." The circuit court made the following findings that established substantial and actual prejudice by the delay in issuing the order:

[1] During the 39 month period between the August 1, 2012 hearing and the October 28, 2015 Decision, Petitioner made a career change that is now adversely affected by the potential revocation of his Driver's License.

[2] At the time of the hearing in August 2012, Petitioner was employed by the West Virginia State Tax Department as an accountant where, for more than 30 years, he held a desk job at the Department's Offices in Wheeling.

[3] In June or July of 2013, Petitioner applied to the West Virginia Department of Motor Vehicles to obtain a commercial driver's license (CDL) which was issued to Petitioner in or about July 2013.

[4] In November 2013, Petitioner became a temporary/substitute school bus driver for the Brooke County Board of Education.

[5] In reliance upon his having obtained a CDL and being employed as a bus driver, Petitioner retired from his Tax Department position in July 2014.

[6] Petitioner became a permanent full time school bus driver for the Brooke County Board of Education in November 2014.

[7] Petitioner is required to maintain his valid CDL as a condition of his employment and thus, if he is unable to drive, he can no longer be employed as a school bus driver.

In essence, the circuit court determined that Mr. Staffileno would not have retired when he did, and changed his employment to that of a school bus driver, if OAH had issued a timely decision. It is obvious, and we so find, that as a result of Mr. Staffileno's change in

544

employment, he will suffer substantial and *actual* prejudice by the imposition of the untimely decision by OAH.

■ Under *Miller* and our reformulation of its holding, the circuit court was required to balance the resulting prejudice to Mr. Staffileno against the reason for the delay by OAH. The circuit court's order does not discuss any reason for the delay. Obviously, Mr. Staffileno did not have the burden of explaining why OAH failed to timely render its decision. In this appeal, DMV has not asserted any reason for the delay. In fact, DMV has gone to great pains to point out that it did not cause the delay. While we can appreciate DMV's efforts to disassociate itself with causing the delay, ultimately the burden was upon it to inform the circuit court and this Court of the possible reason for the delay.[5] *See, e.g., State ex rel. Knotts v. Facemire*, 223 W.Va. 594, 604, 678 S.E.2d 847, 857 (2009) ("If Petitioner is able to meet his burden of demonstrating actual substantial prejudice, then the trial court should proceed to consider the reasons offered by the State for the delay and determine, after weighing the tendered justifications against the demonstrated prejudice, if due process was denied based on the preindictment delay."). In light of the evidence establishing prejudice from the delay in issuing the order and the absence of any evidence showing the reason for the delay, we find no basis to disturb the circuit court's decision on this dispositive issue.[6]

The recent decision in *Warner v. Reed*, No. 15-0229, 2016 WL 870614 (W. Va. Mar. 7, 2016) (memorandum decision), is distinguishable from the facts of this case.[7] In *Warner*, one of the issues raised by the driver was that he was prejudiced by a two year delay between the time that his administrative hearing was held and the issuance of the order revoking his license. We rejected this argument because the driver failed to present any evidence of prejudice from the delay:

Finally, the Court similarly finds no violation of petitioner's due process rights in the approximately two-year delay between the administrative hearing and the issuance of the order revoking petitioner's license. In support of this assignment of error, petitioner alleges only that this delay caused him prejudice because the matter was transferred from the hearing examiner who actually presided over his hearing to another hearing examiner who later entered the order revoking his license. According to petitioner, even if the original examiner had drafter [sic] the order, the delay likely would have caused her to be unable to recall crucial elements of his case. We note, however, that petitioner provides no evidence to support this claim. We further find that, while the DMV did engage in an unnecessarily long delay in issuing the order, there is no evidence in the record that the hearing examiner would have made different findings if the order had been entered sooner. For these reasons, given the specific facts of this case, we find that the delay between the hearing and the issuance of the order revoking petitioner's license did not constitute a violation of his due process rights.

*Warner*, 2016 WL 870614, at *6. Clearly, *Warner* is distinguishable from the instant case, because the driver in *Warner* failed to present any evidence of prejudice from the delay in issuing the revocation order.

■ DMV also has argued that the circuit court could not consider post-hearing evidence regarding Mr. Staffileno's change in employment because such evidence was not considered by OAH. This evidence was properly before the circuit court under our reasoning in *Miller* and W. Va. Code § 29A-5-4(f) (1998) (Repl. Vol. 2015). This statute

---

**5.** During oral argument, counsel for DMV indicated that she did not know what caused the delay, but that she was aware that OAH was correcting a systemic problem it had in timely issuing decisions.

**6.** We previously noted that the hearing examiner who took evidence in this matter resigned and a new hearing examiner was assigned to the case. This fact was not presented by DMV as a reason

for the delay of over three years. Assuming, for the sake of argument, that a change in hearing examiners would cause some delay, such delay should not have extended to over three years.

**7.** *Warner* was litigated under the old administrative system when DMV actually issued the final order after a revocation hearing.

specifically authorizes a circuit court to hear matters not addressed at an administrative hearing "in cases of alleged irregularities in the procedure before the agency[.]" The delay of more than three years in rendering the decision by OAH is a procedural "irregularity." Consequently, the statute permitted the circuit court to address the prejudice caused by the delay even though the issue was not presented to OAH. Moreover, our holding in *Miller* would be meaningless if the circuit court could not consider post-hearing evidence of prejudice caused by a delay in issuing an order.

■ DMV has further argued that Mr. Staffileno is not entitled to relief because he did not file a petition for a writ of mandamus to compel OAH to issue an order sooner. *See* Syl. pt. 2, in part, *Kanawha Valley Transp. Co. v. Public Serv. Comm'n*, 159 W.Va. 88, 219 S.E.2d 332 (1975) ("If a decision is unduly delayed, a proceeding in mandamus may be instituted to compel a decision but not how to decide."). We addressed and rejected this argument by DMV in footnote 7 of *Miller* as follows:

> It is the Commissioner's contention that because Appellee did not attempt to hasten the Commissioner's ruling by filing a petition for writ of mandamus, he waived the argument that the Commissioner's delay in issuing the revocation order violated his due process rights.
>
> ....
>
> In the present case, although Appellee could have sought to hasten the Commissioner's decision by filing a petition for writ of mandamus in the circuit court, Appellee did not waive the argument that he was prejudiced by the delay in his circuit court appeal of the revocation order. Despite the availability of extraordinary relief as a means of seeking the issuance of delayed decisions, a party whose driver's license has been revoked should not have to resort to such relief to obtain a final decision by the Commissioner within a reasonable period of time following the administrative hearing. By the same token, when a party avers that his due process rights have been violated by a delay in the Com-

missioner's decision—that is, that he has suffered actual and substantial prejudice from the delay—but elects not to seek mandamus relief, the reviewing court may consider this fact in determining whether any such prejudice has occurred....

> To be clear, a party who elects not to seek mandamus relief but who, instead, raises the delay issue for the first time on appeal to the circuit court, does so at his peril. The reviewing court is free to consider the aggrieved party's failure to pursue a ruling as a factor in determining whether he has suffered actual and substantial prejudice as a result of the delay.

*Miller*, 229 W.Va. at 72 n.7, 726 S.E.2d at 40 n.7 (internal quotations and citations omitted).

It is clear from the above passage that the decision in *Miller* indicated that a circuit court has discretion to consider the impact of a party's failure to seek a writ of mandamus to compel issuance of a revocation order after a hearing. Such discretion means that a court may give substantial or no weight to such evidence. In the instant case, the circuit court's order is silent on this issue, even though DMV asserted the issue in its response brief before the circuit court. Insofar as the issue of filing a mandamus petition was raised below by DMV, we must assume that through its silence, the circuit court rejected the argument. *See State v. Darrell L.*, No. 13-1208, 2014 WL 6634367, at *4 (W. Va. Nov. 24, 2014) (memorandum decision) ("The circuit court's order following the hearing is silent as to any statements made to the child, aside from that previously mentioned, and, as such, it is presumed that the circuit court properly performed its duty in ruling on these allegations below."); *Mumaw v. U.S. Silica Co.*, 204 W.Va. 6, 9, 511 S.E.2d 117, 120 (1998) ("The circuit court's order was silent on factor C. Therefore, this Court must presume for summary judgment purposes that the circuit court found in favor of Administrator Mumaw regarding factor C."). We find no abuse of discretion in the circuit court's determination, through silence, to give no weight to the mandamus issue under

the facts of this case.[8]

Because we have determined that the circuit court was correct in finding that Mr. Staffileno was prejudiced by the delay in OAH's issuance of its order, we need not address the merits of DMV's two remaining assignments of error. *See Travelers Indem. Co. v. U.S. Silica Co.*, 237 W.Va. 540, 549 n.6, 788 S.E.2d 286, 295 n.6 (2015) ("Insofar as resolution of notice is dispositive, we need not address the remaining assignments of error.").

## IV.

## CONCLUSION

The circuit court's order of April 6, 2016, reversing the decision of OAH, is affirmed.

Affirmed.

CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

LOUGHRY, Chief Justice, dissenting:

The OAH's post-hearing delay in issuing its order affirming the DMV Commissioner's revocation order is seriously troubling. Neither a licensee nor the DMV Commissioner should be required to wait such a long period of time to obtain a decision in an administrative appeal. Nonetheless, the delay in this case did not present grounds for the circuit court to overturn the revocation of the respondent's driver's license. Both the circuit court and the majority of this Court have overlooked that the respondent simply gambled on winning his appeal when he accepted a new job without first contacting the OAH or taking any legal steps to obtain a decision. The majority has also wrongly chosen to ignore the circuit court's erroneous legal con-

clusions regarding who was responsible for the post-hearing delay. In allowing a DUI revocation order to be overturned under these facts, the majority has thrown open the floodgates to allow a tsunami of drunk drivers to gain reinstatement of their licenses due solely to dilatory administrative practices.

The respondent's driver's license was revoked because he allowed his intoxicated [1] friend, Ms. Haynes, to drive his vehicle on the roadways of Brooke County. He gave her the keys to his car despite the fact that they had been at a bar for the preceding two and one-half hours, and despite Haynes's admission that she had been drinking beer. The respondent admitted he had been observing Ms. Haynes's driving prior to the traffic stop because he was aware of her alcohol consumption. A person who knowingly permits his or her vehicle to be driven by someone under the influence of alcohol is subject to the same administrative license revocation as if he or she had personally driven while intoxicated. *See* W.Va. Code § 17C–5A–2(j) (2013 & Supp. 2016). Accordingly, the DMV Commissioner issued an order revoking the respondent's driver's license for knowingly allowing Ms. Haynes to drive his vehicle while she was under the influence of alcohol.

The respondent's revocation was automatically stayed when he appealed to the OAH.[2] After the OAH held an evidentiary hearing on his appeal, but while the matter was still pending a decision, the respondent decided to quit his job as a state tax auditor and become a school bus driver. Thus, even though he knew that the revocation of his driver's license had *merely been stayed* pending the outcome of his appeal, he elected to accept a job that required him to hold a valid driver's license. This career change is the sole basis

---

**8.** During oral argument, counsel for DMV also indicated that Mr. Staffileno could have written a timely letter to OAH to alert it that a decision had not been forthcoming. Mr. Staffileno did not have the burden of writing a letter asking OAH to act timely on his appeal, anymore than DMV had the burden to write a letter asking OAH to promptly render a decision in a case in which it was a party.

**1.** The result of a secondary chemical test of Ms. Haynes's breath revealed that her blood alcohol

content was .159 percent, which is more than twice the legal limit and constitutes aggravated DUI. *See* W.Va. Code §§ 17C–5–2(a)(E), (e) (2013 & Supp. 2016).

**2.** Because of the automatic stay that took effect when the petitioner filed his appeal to the OAH and because the circuit court stayed the OAH's decision, the respondent has retained his driver's license throughout these proceedings.

for his claim of actual and substantial prejudice from the OAH's delay. However, there is nothing in the appendix record to show that the respondent was forced to retire from his auditor position, or that he was forced by circumstances to take a job driving school children. Indeed, at the circuit court's hearing on the respondent's motion to stay the OAH decision, the respondent testified he could have remained at his prior employment. It is clear that his change of employment, and any alleged prejudice, resulted entirely from his voluntary decisions. Obviously, the respondent gambled on the possibility that he would win his appeal and get the revocation order overturned.

Despite the respondent's decision to obtain a job that required a valid driver's license, and with knowledge that the revocation order was only temporarily stayed, neither he nor his lawyer ever communicated in any fashion with the OAH in an attempt to hasten the issuance of the critical decision. The petitioner also did not exercise his right to file a petition for a writ of mandamus: "The mere delay in the disposition or decision of a case does not vitiate the order or judgment. If a decision is unduly delayed, a proceeding in mandamus may be instituted to compel a decision but not how to decide." Syl. Pt. 2, *Kanawha Valley Transp. Co. v. Public Service Comm'n*, 159 W.Va. 88, 219 S.E.2d 332 (1975). This Court has warned licensees against waiting to raise the issue of delay for the first time on appeal to the circuit court:

> [A] party who elects not to seek mandamus relief but who, instead, raises the delay issue for the first time on appeal to the circuit court, does so at his peril. The reviewing court is free to consider the aggrieved party's failure to pursue a ruling as a factor in determining whether he has suffered actual and substantial prejudice as a result of the delay.

*Miller v. Moredock*, 229 W.Va. 66, 73 n.7, 726 S.E.2d 34, 41 n.7 (2011) (emphasis added). While I am sympathetic to the fact that litigants should not be required to file mandamus petitions just to receive a decision in administrative appeals, it would have been reasonable for the respondent to have contacted the OAH or filed a petition for mandamus before making a career change—particularly to a job requiring a valid driver's license as a qualification! Given these facts, the circuit court should have taken into consideration the respondent's failure to affirmatively pursue a ruling on his appeal.

According to the majority, when a delay occurs after the administrative hearing is held, the issue of prejudice "will ordinarily involve some type of change in a party's circumstances that may have been substantially prejudiced because of the delay in issuing a final order by OAH." The majority then concluded that the facts of this case—where the only prejudice was a job change wholly within the respondent's control and where the respondent rolled the dice rather than pursuing a ruling—justified the circuit court's overturning of the administrative agency's decision. I completely disagree. After considering all of the facts and the procedural history of this case, it is clear that the petitioner did not present evidence of actual and substantial prejudice rising to the level of a due process violation.

Woefully, I fear that the majority's reliance on the weak evidence of prejudice in this case may result in countless drunk drivers securing the unwarranted reinstatement of their licenses. During oral argument, the Commissioner's attorney, who explained that she handles DMV appeals on a full-time basis, informed the Court of a backlog of cases at the OAH. Additionally, in her Notice of Appeal filed on February 17, 2017, the Commissioner listed thirteen pending circuit court appeals presenting issues of post-hearing delay by the OAH. Armed with the majority's opinion in this case, every licensee who has experienced post-hearing delay, including drivers who committed serious drunk driving violations and harmed innocent people, will now be motivated to seek the reversal of their license revocations by citing to or worse yet, creating, a change of circumstances in their lives.

Equally problematic are the glaring instances of legal error in the circuit court's final order. Upon finding the presence of actual and substantial prejudice to the respondent, the court was then required to balance that prejudice against the reasons

for the administrative delay. *See Miller*, 229 W.Va. at 67–68, 726 S.E.2d at 35–36, syl. pt. 5.[3] The circuit court made no findings addressing the reasons for the delay and failed to engage in the required balancing. These omissions are most likely the result of the circuit court's repeated insistence that the OAH and the DMV are the same or "allied" agencies. Although there is no dispute that the post-hearing delay was entirely attributable to the OAH, the circuit court faulted the DMV. The court concluded that the "Respondent [DMV] has been reckless in failing to accord Petitioner [Mr. Staffileno] his due process rights" and "[u]nfortunately, Respondent's [DMV's] dilatory practices in license revocation cases are judicially well known."[4] The circuit court supported this second statement with citations to three cases that involved the prior system where the DMV Commissioner was responsible for the administrative hearing process. However, in 2010 the Legislature designated the OAH as the agency to hear and decide all driver's license revocation appeals.[5] By design and express statement of law, the OAH is a separate agency from the DMV.[6] The DMV participates in the administrative hearings only as a party litigant.[7] The OAH hearing examiners who preside over the hearings, and the chief hearing examiner responsible for rendering the ultimate decision, are not within the employment, supervision, or control of the DMV or the DMV Commissioner.[8] Given its insistence on looking to and blaming the wrong

agency, the circuit court lacked the information it needed to address and weigh the reasons behind the delay.[9]

Selecting to side-step the circuit court's failure to apply the balancing test, the majority concludes that once a licensee shows actual and substantial prejudice from a post-hearing delay, the burden is then shifted to the DMV Commissioner to inform the circuit court of the reason for the delay. Inasmuch as the DMV Commissioner was not responsible for the delay, but was merely another party in the appeal, it is unclear how the Commissioner would even know the reason. Requiring such a showing made sense under the old statutory framework, but it lacks any basis under the current law.

For all of the foregoing reasons, I can only conclude that the circuit court's decision to reverse the OAH on the basis of the post-hearing delay was clearly wrong, characterized by an abuse of discretion, and based upon mistake of law. Accordingly, I respectfully dissent.

---

**3.** Relying on *Miller*, the majority of this Court incorporated this balancing test into its new syllabus point two.

**4.** Because Mr. Staffileno filed the appeal in circuit court, he was designated as the petitioner and the DMV was designated as the respondent in the court's order.

**5.** *See, e.g.,* W.Va. Code § 17C–5A–2 (2013 & Supp. 2016) (directing OAH to preside over and decide driver's license revocation appeal hearings); W.Va. Code §§ 17C–5C–1 to –5 (2013) (creating OAH and specifying its jurisdiction); § 17C–5C–4 (2013) (designating DMV Commissioner as party who may be represented by counsel at OAH hearing).

**6.** *See supra* note 5. West Virginia Code § 17C–5C–1(a) states, "[t]he Office of Administrative Hearings is created as a separate operating agency within the Department of Transportation."

**7.** *See* W.Va. Code § 17C–5C–4.

**8.** *See* W.Va. Code § 17C–5C–1 (designating OAH as separate agency and authorizing appointment of chief hearing examiner); § 17C–5C–2 (authorizing chief hearing examiner to employ other hearing examiners).

**9.** The majority states that the circuit court issued an amended order clarifying its awareness that the DMV and the OAH are separate agencies. However, the only amended order in the appendix record was entered on November 20, 2015, and pertains to the circuit court's stay order. Despite seeming to acknowledge in that amended stay order that the DMV and the OAH are different, the circuit court, in its final order entered on April 8, 2016, once again conflated the two agencies.