625 S.E.2d 319 (2005)
218 W.Va. 557
In re Petition of Scott A. MCKINNEY for Judicial Review of Administrative Decision Made By F. Douglas Stump, Commissioner, Department of Transportation, Division of Motor Vehicles.
No. 32748.
Supreme Court of Appeals of West Virginia.
Submitted: November 1, 2005.
Filed: November 29, 2005.
*320 Darrell V. McGraw, Jr., Esq., Attorney General, Janet E. James, Esq., Assistant Attorney General, Charleston, for F. Douglas Stump, Commissioner, West Virginia Division of Motor Vehicles.
Randy D. Hoover, Esq., Beckley, for Scott A. McKinney.
Justice MAYNARD delivered the Opinion of the Court.
Chief Justice ALBRIGHT and Justice STARCHER concur, in part, and dissent, in part and reserve the right to file separate opinions.
MAYNARD, Justice.
Appellant F. Douglas Stump, Commissioner of the West Virginia Division of Motor Vehicles, appeals the November 17, 2004 order of the Circuit Court of Raleigh County that reversed an administrative driver's license revocation. For the reasons that follow, we reverse the circuit court's order.

*321 I.

FACTS
Scott A. McKinney, Appellee herein, was convicted of driving under the influence (hereafter "DUI") on October 2, 1997. As a result of that conviction, the Commissioner of the Division of Motor Vehicles (hereafter "the Commissioner") revoked McKinney's driver's license.
On February 24, 2002, while McKinney's driver's license remained revoked, he was arrested for speeding and for driving while revoked for DUI in violation of W.Va.Code § 17B-4-3(b) (2004).[1] McKinney subsequently pled guilty to a lesser speeding offense and to the lesser crime of driving while suspended or revoked for administrative reasons in violation of W.Va.Code § 17B-4-3(a).
The Division of Motor Vehicles (hereafter "the Division") thereafter issued an order, dated March 11, 2003, that advised McKinney that his privilege to drive was suspended for one year pursuant to W.Va.Code § 17B-3-6(a)(1) (1997). The order advised McKinney that "the Division records and/or other evidence shows that you drove on 02/24/02 while your license was suspended for driving under the influence of alcohol."
After a February 23, 2004, hearing, the Commissioner of the Division of Motor Vehicles upheld the suspension, concluding that McKinney "operated a motor vehicle on February 24, 2002, while his license was revoked for driving under the influence." Additionally, the Commissioner found that "Pursuant to West Virginia Code § 17B-3-6(a), the Division is authorized to suspend the driver's license of any person without preliminary hearing upon showing by its records or other sufficient evidence that the licensee has committed an offense in which mandatory revocation of a driver's license is required upon conviction." McKinney appealed to the Circuit Court of Raleigh County.
By order entered November 17, 2004, the circuit court reversed the administrative license suspension. The circuit court reasoned that because McKinney was convicted of driving while suspended for administrative reasons pursuant to W.Va.Code § 17B-4-3(a), which does not require suspension for a first offense under W.Va.Code § 17B-4-3(c), the Commissioner was precluded from suspending McKinney's license for an additional year. The Commissioner now appeals the circuit court's order.

II.

STANDARD OF REVIEW
Concerning the standard of review in cases like the one before us, we have indicated that "[t]his Court applies the same standard of review that the circuit court applied to the Commissioner's administrative decision  giving deference to the Commissioner's purely factual determinations; and giving de novo review to legal determinations." Choma v. West Virginia DMV, 210 W.Va. 256, 258, 557 S.E.2d 310, 312 (2001). Because the instant appeal involves a question of statutory interpretation, we apply a de novo standard.

III.

DISCUSSION
This case concerns the construction and application of two statutes. First, W.Va. Code § 17B-3-6(a)(1) (1997), relied upon by the Division in suspending McKinney's driver's license, provides,
(a) The division is hereby authorized to suspend the driver's license of any person without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:
(1) Has committed an offense for which mandatory revocation of a driver's license is required upon conviction[.]
Plainly, this statute indicates that the Division is authorized to suspend a person's driver's license when it has sufficient evidence that the person committed an offense for which mandatory revocation of a driver's license is required upon conviction.
*322 The second statute is W.Va.Code § 17B-4-3 (2004), relied upon by the circuit court in reversing McKinney's license revocation for driving while revoked for DUI, which provides in part,
(a) Except as otherwise provided in subsection (b) or (d) of this section, any person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully suspended or revoked by this state or any other jurisdiction is, for the first offense, guilty of a misdemeanor....
(b) Any person who drives a motor vehicle on any public highway of this state at a time when his or her privilege to do so has been lawfully revoked for driving under the influence of alcohol, controlled substances or other drugs, or for driving while having an alcoholic concentration in his or her blood of eight hundredths of one percent or more, by weight, or for refusing to take a secondary chemical test of blood alcohol content, is, for the first offense, guilty of a misdemeanor....
(c) Upon receiving a record of the first or subsequent conviction of any person under subsection (b) of this section upon a charge of driving a vehicle while the license of such person was lawfully suspended or revoked, the division shall extend the period of such suspension or revocation for an additional period of one year and after the date such person would otherwise have been entitled to apply for a new license. Upon receiving a record of the second or subsequent conviction of any person under subsection (a) of this section upon a charge of driving a vehicle while the license of such person was lawfully suspended or revoked, the division shall extend the period of such suspension or revocation for an additional period of one year from and after the date such person would otherwise have been entitled to apply for a new license.
Subsection (c) of this statute indicates that license revocation is mandated only upon a second or subsequent conviction for driving while revoked for administrative reasons. The question before this Court is which of these two statutes applies to McKinney.
The Commissioner argues that W.Va.Code § 17B-3-6(a)(1) applies. According to the Commissioner, this code section authorizes the Division to suspend a person's driver's license upon a showing of sufficient evidence that the person has committed an offense for which mandatory revocation of a driver's license is required upon conviction. According to the Commissioner, McKinney's driver's license was not suspended for driving while revoked for administrative reasons. Rather, the Division had sufficient evidence in its records[2] that McKinney drove a vehicle while his license was revoked for DUI. Further, asserts the Commissioner, according to W.Va.Code § 17B-4-3(c), a first conviction for driving while revoked for DUI requires extending the license suspension for an additional year. Therefore, the Commissioner concludes that the Division had the authority, pursuant to W.Va.Code § 17B-3-6(a)(1), to suspend McKinney's license.
This Court agrees with the Commissioner that the Division had the authority to suspend McKinney's driver's license after it received evidence that he drove a vehicle while his driver's license was revoked for DUI, even though McKinney was not actually convicted of driving while revoked for DUI. When this Court is called upon to determine the meaning of a statute, we are guided by the principle that "[w]hen a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 1, State ex rel. Fox v. Board of Trustees of Policemen's Pension, 148 W.Va. 369, 135 S.E.2d 262 (1964), overruled on other grounds, Booth v. Sims, 193 W.Va. 323, 456 S.E.2d 167 (1995). Applying this principle to W.Va.Code § 17B-3-6(a)(1) leads us to conclude that this code section is clear and unambiguous, and the Legislature's intent when it enacted the statute is plain. Therefore, we hold that pursuant to W.Va.Code § 17B-3-6(a)(1) *323 (1997), the West Virginia Division of Motor Vehicles is authorized to suspend the driver's license of any person without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee committed an offense for which mandatory revocation of a driver's license is required upon conviction, regardless of whether the licensee is convicted of the offense. We see no reason why the clear language of W.Va. Code § 17B-3-6(a)(1) should not be applied in this case.
The facts below show that the Division had sufficient evidence that McKinney drove while his driver's license remained revoked for DUI. Also, pursuant to W.Va.Code § 17B-4-3(c), driving while revoked for DUI is an offense for which mandatory revocation of a driver's license is required upon conviction. Accordingly, pursuant to W.Va.Code § 17B-3-6(a)(1), the Division was authorized to suspend McKinney's license for driving while revoked for DUI.
McKinney posits several arguments to support his contention that W.Va.Code § 17B-3-6(a)(1) does not apply to him. First, he reads § 17B-3-6(a)(1) to authorize suspension only upon actual conviction of an offense for which mandatory revocation of a driver's license is required. He points out that he was convicted of driving while suspended or revoked for administrative reasons, an offense for which mandatory revocation is not required under W.Va.Code § 17B-4-3(c). We believe that McKinney plainly misreads § 17B-3-6(a)(1). This code section requires only that the Division have sufficient evidence that the licensee committed an offense "for which mandatory revocation of a driver's license is required upon conviction." It does not require sufficient evidence that the licensee actually was convicted of such an offense before license revocation is authorized.
Also, "[i]t is a cardinal rule of statutory construction that a statute should be construed as a whole, so as to give effect, if possible, to every word, phrase, paragraph and provision thereof[.]" Syllabus Point 9, in part, Vest v. Cobb, 138 W.Va. 660, 76 S.E.2d 885 (1953). To give effect to W.Va.Code § 17B-3-6(a)(1), it must be read to provide for something other than mandatory revocation for a first conviction for driving while revoked for DUI because this is clearly provided for in W.Va.Code § 17B-4-3(c). In other words, to read W.Va.Code § 17B-3-6(a)(1) as urged by McKinney would be to find that the Legislature enacted a completely redundant statutory provision. This we decline to do.
McKinney next avers that W.Va.Code § 17B-4-3(c) shows a legislative intent to authorize a license suspension only upon the second or subsequent conviction for driving while revoked for administrative reasons. Although this may be true, McKinney ignores the fact that his license was not suspended because of his conviction for driving while suspended or revoked for administrative reasons but because the Division had sufficient evidence that he drove while revoked for DUI. For this same reason, we reject McKinney's argument that it would be irrational to presume that the Legislature intended to lessen the penalty for driving while suspended for administrative reasons under § 17B-4-3(c) while retaining the more severe penalty for the same offense in § 17B-3-6(a)(1). Again, McKinney received a "more severe" penalty under § 17B-3-6(a)(1) for driving while revoked for DUI and not for driving while revoked for administrative reasons.
In addition, McKinney contends that to apply § 17B-3-6(a)(1), as the Division did herein, renders the code section inconsistent with § 17B-4-3(c). This is incorrect. West Virginia Code § 17B-4-3(c) applies in cases where a person is convicted of driving while suspended or revoked for administrative reasons and the Division does not have sufficient evidence that he or she committed an offense for which mandatory revocation of a driver's license is required upon conviction. On the other hand, W.Va.Code § 17B-3-6(a)(1) applies where there is sufficient evidence that a person committed an offense for which mandatory revocation of a driver's license is required upon conviction regardless of the offense for which that person is actually convicted. There simply is no conflict *324 between the two code sections.[3]
Finally, we are confident that our holding in this case is consistent not only with the clear statutory language of W.Va. Code § 17B-3-6(a)(1) but also with the Legislature's intention in enacting the license revocation statutes. The purpose of this State's administrative driver's license revocation procedures is to protect innocent persons by removing intoxicated drivers from the public roadways as quickly as possible. This Court recently reiterated in State ex rel. Stump v. Johnson, 217 W.Va. 733, 743, 619 S.E.2d 246, 256 (2005)[4] the fact that "the administrative driver's license revocation procedures of the Commissioner are meant to protect the public from persons who drive under the influence of alcohol." Citing Stalnaker v. Roberts, 168 W.Va. 593, 599, 287 S.E.2d 166, 169 (1981) (finding "[t]he intent of the West Virginia traffic laws which provide that the commissioner of motor vehicles revoke the licenses of dangerous drivers is protection for the innocent public"); State ex rel. Ruddlesden v. Roberts, 175 W.Va. 161, 164, 332 S.E.2d 122, 126 (1985) (recognizing "[t]he drunk driving laws of this State are hardly remedial in nature. They are regulatory and protective, designed to remove violat[or]s from the public highways as quickly as possible"); Shell v. Bechtold, 175 W.Va. 792, 796, 338 S.E.2d 393, 396 (1985) (stating "[t]he purpose of the administrative sanction of license revocation is the removal of persons under the influence of alcohol and other intoxicants from our highways ... The revocation provisions are not penal in nature ... and should be read in accord with the general intent of our traffic laws to protect the innocent public") (internal citations omitted); Johnson v. Commissioner, 178 W.Va. 675, 677, 363 S.E.2d 752, 754 (1987) (indicating that "[t]he administrative sanction of license revocation is intended to protect the public from persons who drive under the influence of alcohol"); and State ex rel. Hall v. Schlaegel, 202 W.Va. 93, 97, 502 S.E.2d 190, 194 (1998) (opining that "[t]he purpose of the administrative sanction of license revocation, as we stated in Shell v. Bechtold, 175 W.Va. 792, 338 S.E.2d 393 (1985), `is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways.' Id. at 796, 338 S.E.2d at 396. This objective of removing substance-affected drivers from our roads in the interest of promoting safety and saving lives is consistent `with the general intent of our traffic laws to protect the innocent public'").
We believe that the purpose of speedily removing intoxicated drivers from our public roadways would be greatly frustrated if the Division's revocation powers were totally dependent on the discretion of local prosecutors in choosing how to charge drunk drivers and whether to accept pleas to lesser charges  a discretion based primarily on the exigencies of the criminal justice system, not the protection of innocent drivers. While this Court understands the concern that our holding herein will interfere with the ability of prosecutors to dispose of drunk driving cases with plea bargains, thus potentially overloading trial court dockets, we deem this concern subordinate to our duty to apply statutory law as the Legislature plainly intended. We also believe this concern to be subordinate to the substantial legislative policy of protecting innocent persons from dangerous drunk drivers.

IV.

CONCLUSION
For the reasons set forth above, we conclude that the Division had the authority, *325 under W.Va.Code § 17B-3-6(a)(1), to revoke McKinney's driver's license for driving while revoked for DUI. Accordingly, the November 17, 2004, order of the Circuit Court of Raleigh County reversing the Division's administrative driver's license revocation is reversed.
Reversed.
ALBRIGHT, Chief Justice, concurring, in part, dissenting, in part.
While I certainly agree with the majority's holding of law which acknowledges the objective of this state's administrative driver's license revocation procedures is the protection of innocent parties, I dissent to the majority's conclusion that West Virginia Code § 17B-3-6(a)(1)[1] requires the suspension of an operator's driver's license "regardless of whether the licensee is convicted of the offense" that is the statutory trigger for the suspension. Critically, the offense to which Mr. McKinney pled guilty[2] was not an offense that requires license suspension under West Virginia Code § 17B-4-3(c)  the statute to which West Virginia Code § 17B-3-6(a)(1) looks for purposes of identifying whether mandatory revocation is involved. Consequently, the majority has wrongly permitted license suspension that is not authorized by either West Virginia Code § 17B-3-6(a)(1) or West Virginia Code § 17B-4-3.
The trial court found significant the fact that the Legislature had amended West Virginia Code § 17B-4-3 in 1999 to remove the language that formerly permitted an additional one year of license suspension for driving on a suspended license for a first offense. See W.Va.Code § 17B-4-3(c) (1994).[3] Now, the additional one year of license suspension is only authorized by statute for the second or subsequent convictions of offenses under subsection (a) of West Virginia Code § 17B-4-3. See W.Va.Code § 17B-4-3(c) (2004). The trial court, when trying to resolve this issue of statutory interplay, reasoned as follows:
Here the intention of the Legislature is clear, and that should be the end of the matter. The Legislature has directly spoken to the precise question at issue. Code § 17B-3-6(a)(1) authorizes the suspension of a person's driver's license when mandatory revocation is required upon conviction. Code § 17B-4-3 [1999] eliminated the revocation of the person's driver's license for an additional year for the first offense driving on a suspended license for administrative reasons. [Mr. McKinney] was convicted of Driving Suspended for Administrative Reasons within the contemplation of Code § 17B-4-3(a). Therefore, the Commissioner has revoked [Mr. McKinney's] license for an additional year even though [Mr. McKinney] was convicted of an offense that precludes a mandatory revocation. Accordingly, the Final [DMV] Order was violative of Code § 29-5-4(g)(2) in that it was issued in excess of the statutory authority of the agency.
While the majority chooses to ignore the significance of the language "upon conviction" that appears in both of the statutes under consideration, that language should play a critical and determinative role in determining whether administrative revocation is warranted. As with any criminal offense, it is the criminal conviction that triggers the *326 applicable civil penalty at issue here. Only by circumventing the critical significance of the actual conviction's role to the invocation of administrative sanctions under the legislative scheme at issue can the majority reach the result that a conviction for an offense for which mandatory revocation is required is not necessary for license suspension under West Virginia Code § 17B-3-6(a)(1). The analysis employed by the majority to reach its result is unquestionably tortured and certainly effectuates an absurd result. See Charter Commun. v. Community Antenna Serv., Inc., 211 W.Va. 71, 77, 561 S.E.2d 793, 799 (2002) (recognizing that "[i]t is the `duty of this Court to avoid whenever possible a construction of statute which leads to absurd, inconsistent, unjust or unreasonable results'") (quoting State v. Kerns, 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990)).
The misguided result adopted by the majority has far reaching ramifications for the prosecutors of this state. What this Court began in Stump v. Johnson, 217 W.Va. 733, 619 S.E.2d 246 (2005), in preventing prosecuting attorneys from entering into plea agreements that impact upon the authority of the Department of Motor Vehicles with regard to administrative license revocation proceedings has now been ratcheted up another notch. The practice of resolving numerous violations of the state's motor vehicle laws through plea agreements will likely end when affected citizens recognize that despite their entry of a plea to an offense that does not carry a mandatory license revocation they will still lose their license.[4] An additional impact of the majority's decision will be an unwelcome increase in the number of DUI and DUI suspension cases that prosecutors are essentially powerless to resolve through any type of plea agreements. Thus, it is not hard to see that the logical extension of the majority's ruling is to effectively tie the hands of prosecutors with regard to disposing of such cases.
Based on the foregoing, I respectfully concur, in part, and dissent, in part, from the majority's opinion.
I am authorized to state that Justice Starcher joins in this separate opinion.
NOTES
[1] When McKinney was charged with driving while revoked for DUI, the 1999 version of W.Va. Code § 17B-4-3 was in effect. The 2004 amendment to this code section did not alter the language relevant to this appeal. Therefore, we cite to the 2004 version.
[2] Specifically, the Division had received McKinney's uniform traffic citation and the abstract of judgment for driving while revoked for administrative reasons.
[3] We also find no merit in McKinney's contention that W.Va.Code § 17B-4-3(c), which McKinney alleges is the "more specific statute," should control over W.Va.Code § 17B-3-6(a)(1), which he alleges is the "more general" statute. As we discussed above, the code sections are not in conflict.
[4] In State ex rel. Stump v. Johnson, this Court held in Syllabus Point 3,

Neither a prosecuting attorney, law enforcement officer nor any other person has the authority to enter into an agreement that would prevent the Commissioner of the West Virginia Department of Motor Vehicles from carrying out his or her legislative responsibilities or to prevent or impede a law enforcement officer from presenting evidence of the arrest in the Commissioner's license revocation administrative hearing.
[1] The pertinent part of the statute provides that:

(a) The division is hereby authorized to suspend the driver's license of any person without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:
(1) Has committed an offense for which mandatory revocation of a driver's license if required upon conviction [.]
W.Va.Code § 17B-3-6(a)(1) (emphasis supplied).
[2] He pled guilty to a speeding offense and to driving while suspended for administrative reasons in violation of West Virginia Code § 17B-4-3(a). The penalty for a conviction under West Virginia Code § 17B-4-3(a) is a fine and jail time depending on whether the offense at issue is a first, second, or third commission.
[3] That provision provided as follows:

(c) Upon receiving a record of the conviction of any person under subsection (a) or (b) of this section upon a charge of driving a vehicle while the license of such person was lawfully revoked, the division shall extend the period of such suspension for an additional period of one year from and after the date such person would otherwise have been entitled to apply for a new license.
W.Va.Code § 17B-4-3(c) (1994).
[4] And what the majority, in its shortsighted approach, fails to realize is the far reaching economical implications for the citizens of this state who upon losing their license are essentially precluded from gainful employment due to the necessity of automotive transportation to reach their place of employment. While I do not wish to minimize the seriousness of DUI offenses, I do think it is important to recognize that there are those cases where the offense at issue does not warrant license revocation for a full year, especially where the Legislature has determined that the punishment for the criminal offense does not carry that sentence. To impose a harsher administrative sanction than that allowed for the criminal offense seems absurd.