IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 20-0192

_____

FILED
November 18, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EVERETT FRAZIER,
COMMISSIONER, WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
RESPONDENT BELOW, PETITIONER

V.

JOSHUA DERECHIN,
PETITIONER BELOW, RESPONDENT

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Joanna I. Tabit
Case No. 19-AA-80

AFFIRMED, IN PART; REVERSED, IN PART, AND REMANDED
_____

Submitted: October 6, 2021
Filed: November 18, 2021

Patrick Morrisey, Esq.
Attorney General
Elaine L. Skorich, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioner

Mark McMillian, Esq.
Mark McMillian – Attorney at Law,
L.C.
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs, in part, and dissents, in part, and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2. "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syllabus Point 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3. "On appeal to the circuit court from an order of the Office of Administrative Hearings affirming the revocation of a party's license to operate a motor vehicle in this State, when the party asserts that his or her constitutional right to due process has been violated by a delay in the issuance of the order by the Office of Administrative Hearings, the party must demonstrate that he or she has suffered actual and substantial prejudice as a result of the delay. Once actual and substantial prejudice from the delay has been proven, the circuit court must then balance the resulting prejudice against the reasons for the delay." Syllabus Point 2, *Reed v. Staffileno*, 239 W. Va. 538, 803 S.E.2d 508 (2017).

i

4.     " 'A driver's license is a property interest and such interest is entitled to protection under the Due Process Clause of the West Virginia Constitution.' Syl. Pt. 1, *Abshire v. Cline*, 193 W. Va. 180, 455 S.E.2d 549 (1995)."  Syllabus Point 2, *Straub v. Reed*, 239 W. Va. 844, 806 S.E.2d 768 (2017).

WALKER, Justice:

After Joshua Derechin's driver's license was revoked by the Division of Motor Vehicles (DMV)[1] in March 2013, he requested a hearing before the Office of Administrative Hearings (OAH). OAH held a hearing two years later – in August 2015 – yet the OAH did not issue its order affirming the license revocation until July 2019. On appeal, the circuit court reversed and rescinded Mr. Derechin's license revocation, dismissing the case with prejudice, concluding that Mr. Derechin had been actually and substantially prejudiced by OAH's near four-year delay in issuing a final order. We affirm the reversal and dismissal of the action because the circuit court did not abuse its discretion in concluding that Mr. Derechin had suffered a change in circumstances and had been actually and substantially prejudiced by the long post-hearing delay. But, the circuit court also awarded Mr. Derechin costs and attorney fees for the "overall delay" of the proceedings, even though the pre-hearing delay was not raised with specificity by Mr. Derechin below, the facts and circumstances do not support an award of costs and fees based on the pre-hearing delay, and the post-hearing delay is not attributable to DMV's conduct, but to the OAH. So, we find error in and reverse the assessment of costs and attorney fees against DMV by the circuit court.

---

[1] At the time Mr. Derechin filed his appeal to the circuit court, Adam Holley was the acting Commissioner. Everett Frazier became acting Commissioner of the Department of Motor Vehicles by the time Mr. Derechin filed his appeal to this Court and was substituted as the appropriate party pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

# I.    FACTS AND PROCEDURAL HISTORY

Mr. Derechin had recently moved to West Virginia when former Charleston Police Officer B.A. Lightner pulled him over in downtown Charleston after observing that Mr. Derechin was "driving erratically" and had improperly gone straight onto Court Street from the right lane close to midnight on February 1, 2013.  Mr. Derechin informed Officer Lightner that he had consumed alcoholic beverages "not tonight, earlier."  Officer Lightner observed that Mr. Derechin was walking normally to the roadside, though noted he was unsteady in exiting the vehicle.  Officer Lightner smelled alcohol and noted that Mr. Derechin was nervous and had glassy eyes.  Upon performance of field sobriety tests, Mr. Derechin exhibited impairment in the Horizontal Gaze Nystagmus (HGN) Test, the walk-and-turn test, and the one-leg-stand test.  Mr. Derechin's secondary chemical test demonstrated a 0.071% blood alcohol concentration.

On February 22, 2013, DMV issued an order of revocation for Mr. Derechin's driver's license effective March 29, 2013.  Because it was his first offense, Mr. Derechin was ordered to complete 120 days of the West Virginia Alcohol Test and Lock Program (Interlock) and serve a fifteen-day revocation or, alternatively, serve a ninety-day revocation.  In either case, Mr. Derechin would have been required to participate in the West Virginia Safety and Treatment Program and pay the costs of reinstatement.  Rather than pursue either of those options, on March 19, 2013, Mr. Derechin requested an administrative hearing before the OAH.

OAH set Mr. Derechin's hearing for July 9, 2013, but it was rescheduled to September 12, 2013 after Mr. Derechin sought a continuance due to his counsel's long-standing, pre-paid travel plans outside of the United States. The day of the September 12, 2013 hearing, DMV requested and was granted an emergency continuance after its primary witness, Officer Lightner, had childcare issues and could not appear. OAH did not issue an order rescheduling Mr. Derechin's hearing until August 12, 2014 — nearly a year later — and noticed the rescheduled hearing to occur on February 12, 2015. The Legislature, citing the backlog of cases like Mr. Derechin's, amended West Virginia Code § 17C-5A-3a to allow drivers who waived their right to a hearing before the OAH to serve the entirety of their revocation period on the Interlock program. Mr. Derechin did not elect to participate.

Next, the February 2015 hearing was moved to March 12, 2015 due to OAH's scheduling errors. The March 2015 hearing was then continued to August 28, 2015 after Mr. Derechin asked for a continuance the day before the hearing. Finally, on August 28, 2015, OAH conducted the hearing, and DMV presented only Officer Lightner's report, rather than Officer Lightner himself, to support its revocation of Mr. Derechin's license. OAH did not issue an order following the hearing. DMV filed a motion for final order *three years later* in September 2018 but did not receive a response. Nearly another year passed before OAH entered its order on July 22, 2019, affirming the revocation of Mr. Derechin's license.

On July 30, 2019, Mr. Derechin filed an appeal in the Circuit Court of Kanawha County arguing both that the OAH erred in affirming the revocation and that he was actually and substantially prejudiced by the OAH's delay in holding a hearing and in issuing its decision.[2] DMV filed a cross-petition for judicial review, citing that it was also actually and substantially prejudiced by OAH's post-hearing delay.

The circuit court conducted an evidentiary hearing. At the hearing, Mr. Derechin argued that OAH had excluded or otherwise discounted important evidence. That evidence included a negative inference for spoliation of a videotape recording documenting the stop, as well as newspaper articles related to Officer Lightner's discharge from the Charleston Police Department for misconduct. Upon the circuit court's review, it found that the OAH had improperly found Officer Lightner's report credible given the newspaper articles evidencing his "demonstrable unreliability," and that Mr. Derechin was entitled to an inference in his favor with respect to the unavailable videotape. The circuit court therefore concluded that DMV had not met its burden to prove that Mr. Derechin was driving impaired despite his BAC being under the legal limit.

The circuit court further found that Mr. Derechin was actually and substantially prejudiced by the post-hearing delay because, among other things, he had

---

[2] Though Mr. Derechin's petition to the circuit court references pre-hearing delay, he did not advance that argument at the hearing and the circuit court did not analyze whether Mr. Derechin was prejudiced by a pre-hearing delay.

divorced during the pendency of the proceedings, and his wife was no longer available to drive him to work in or out of state as his job required. Based on where Mr. Derechin lived, the circuit court found that Uber was an unreliable option since, when attempted, it often cancelled the ride noting that there were no cars available. As to bus transportation, the circuit court found it was similarly impractical because he would have to walk nearly a mile off a mountain to the bus stop to catch a bus that ran infrequent routes with no realistic connection to his workplace. In addition to his testimony regarding his divorce and the difficult logistics of getting to his office and more remote work locations, Mr. Derechin also testified that he had been offered a job with a company in Mississippi, and declined it given that his license was in jeopardy.

To contravene the circuit court's finding that Mr. Derechin had been actually and substantially prejudiced by the delay, DMV contended that it, too, was actually and substantially prejudiced by OAH's post-hearing delay and that dismissal would punish DMV for OAH's delay. Together with the fact that DMV had not filed any mandamus action to force OAH to issue its decision earlier, the circuit court found that DMV had not advanced that Mr. Derechin's case was particularly complex or that there was any exceptional reason for the forty-seven-month delay. The circuit court reversed and rescinded Mr. Derechin's license revocation, dismissing the action with prejudice and awarded him attorney fees and costs. DMV appeals that order.

## II.    STANDARD OF REVIEW

In reviewing DMV's appeal, we apply the following standard:

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.[3]

And where, as here, the circuit court reversed the findings of OAH, our review is likewise deferential to the circuit court in its ultimate disposition: "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*."[4]

## III.    ANALYSIS

DMV raises three issues with the circuit court's order: (1) Mr. Derechin was not actually and substantially prejudiced by OAH's post-hearing delay, and even if he were, DMV's prejudice should have been balanced against Mr. Derechin's; (2) the circuit court substituted its judgment for that of the OAH with respect to Officer Lightner's credibility and spoliation of evidence; and (3) assessment of costs, fees, and expenses against DMV for OAH's post-hearing delay was error.  We examine each of these arguments in turn.

---

[3] Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

[4] *Id.* at Syl. Pt. 2.

*A.*     *Actual and Substantial Prejudice from Post-Hearing Delay*

Though there are no time constraints imposed by rule or statute governing the issuance of decisions by OAH following an administrative hearing,[5] due process still operates as an outer limit.[6] As we have discussed, "this Court has long recognized the constitutional mandate that ' "justice shall be administered without . . . delay." W. Va. Const. Art. III, § 17.' *Frantz v. Palmer*, 211 W. Va. 188, 192, 564 S.E.2d 398, 402 (2001)."[7] And, "'administrative agencies performing quasi-judicial functions have an affirmative duty to dispose promptly of matters properly submitted.'"[8] But importantly, a delay in and of itself – even a substantial one – is insufficient to establish a due process violation requiring vacation of an order of revocation under this Court's precedent.

In *Miller v. Moredock*, we explicitly declined to extend a presumption of prejudice based solely on the passage of time.[9] Instead, we established in *Miller* a standard for determining whether post-hearing delay amounts to a violation of due

---

[5] *See* W. Va. Code § 17C-5C-1, *et seq*. and 105 C.S.R. 1-1, *et seq.*

[6] *See Holland v. Miller*, 230 W. Va. 35, 39, 736 S.E.2d 35, 39 (2012) ("[D]ue process concerns are raised when there are excessive and unreasonable delays in license suspension cases.").

[7] *Reed v. Staffileno*, 239 W. Va. 538, 542 803 S.E.2d 508, 512 (2017).

[8] *Id.* (quoting Syl. Pt. 7, in part, *Allen v. State Human Rights Comm'n*, 174 W. Va. 139, 324 S.E.2d 99 (1984)).

[9] *Miller v. Moredock*, 229 W. Va. 66, 71-72, 726 S.E.2d 34, 39-40 (2011).

process, tying a violation to a finding of actual prejudice.[10] Later, in *Reed v. Staffileno*, that standard was updated to reflect the administrative system under OAH, but was substantively unchanged:

> On appeal to the circuit court from an order of the Office of Administrative Hearings affirming the revocation of a party's license to operate a motor vehicle in this State, when the party asserts that his or her constitutional right to due process has been violated by a delay in the issuance of the order by the Office of Administrative Hearings, the party must demonstrate that he or she has suffered actual and substantial prejudice as a result of the delay. Once actual and substantial prejudice from the delay has been proven, the circuit court must then balance the resulting prejudice against the reasons for the delay.[11]

*Staffileno* further elucidated that "[a]s a general matter, under *Miller*, the standard for post-hearing prejudice will ordinarily involve some type of change in a party's circumstances that may have been substantially prejudiced because of the delay in issuing a final order by OAH."[12]

DMV argues that Mr. Derechin has not suffered actual and substantial prejudice as the circuit court concluded. As to his change of circumstances, the circuit court found that Mr. Derechin and his wife had divorced and that Mr. Derechin "unquestionably underwent a stark change in circumstances during the unreasonably long delay in the issuance of the decision by the OAH." Mr. Derechin was and is employed as

---

[10] *See id.* at Syl. Pt. 5.

[11] Syl. Pt. 2, *Staffileno*.

[12] *Id.* at 543, 803 S.E.2d at 513.

8

a bridge design engineer and conducts about thirty percent of his work outside the State of West Virginia. He also works in distant parts of the state. Mr. Derechin's ex-wife did not work outside the home and if he had no license, was able to drive him to his Charleston office, his out-of-state work assignments, and work assignments in distant locations within the state.

After noting that Mr. Derechin had no family closer than Chicago, the circuit court examined the public transportation available to Mr. Derechin, concluding that there was "nothing realistic." To catch the bus, Mr. Derechin would have to walk about a mile off a mountain to reach the line, and the busses run infrequently. Given that Mr. Derechin often works irregular hours, the circuit court concluded that option was not feasible, nor was Uber.[13] And those options only addressed Petitioner's need to get to his office, when a good portion of his work was spent traveling to distant parts of the state, or out-of-state. The circuit court further found that Mr. Derechin had been unable to accept or apply for promotions and that he had been offered management positions in Mississippi but declined because his license was in jeopardy.

Based on those factual findings, the circuit court determined that Mr. Derechin had undergone a change in circumstances because had the OAH issued a decision even a year after the hearing, it would have simply been an inconvenience for

---

[13] According to the circuit court, Uber rates were $20-22 one way and the attempts to use the service resulted in "no cars available."

his wife to take him to work and to his work assignments. It then concluded that Mr. Derechin had suffered actual and substantial prejudice because being unable to drive would disqualify him from continuing in his present job. As to DMV's position and the requisite balancing of the reasons for the delay, the circuit court heard testimony from the Chief Hearing Examiner for OAH on behalf of DMV that OAH had made efforts to address the "critical backlog" of cases. The Chief Hearing Examiner testified that Mr. Derechin's order had been released without final review[14] but the circuit court found that no other measures had been taken to expedite the final order and that no evidence had been put forth that Mr. Derechin's case was particularly complex or that there was some other exceptional reason for such a long delay.

Analogizing Mr. Derechin's circumstances to those in *Staffileno*, the circuit court concluded that he had been actually and substantially prejudiced by the forty-seven-month post-hearing delay, reversed his license revocation, and dismissed the action with prejudice. On appeal, DMV contends that Mr. Derechin's circumstances are unlike those in *Staffileno*, and more akin to *Straub v. Reed*.[15]

---

[14] The Chief Hearing Officer "temporarily suspended the review of proposed Final Orders submitted by the Hearing Examiners for stylistic, typographical, clerical, and grammatical errors. Pursuant to West Virginia Code § 17C-5C-2, the Chief Hearing Examiner has limited her review of the Hearing Examiner's recommended decision to ensure legal accuracy and clarity."

[15] *Straub v. Reed*, 239 W. Va. 844, 806 S.E.2d 768 (2017).

In *Staffileno*, this Court examined whether Mr. Staffileno was actually and substantially prejudiced by a thirty-nine-month post-hearing delay.[16] Mr. Staffileno had been employed as an accountant for more than thirty years, but during the three-plus year pendency of his license revocation proceeding, he applied to get a commercial driver's license, retired from his desk job as an accountant and became a full-time school bus driver.[17] As Mr. Staffileno had to maintain his commercial driver's license as a condition of his employment and he could not be employed if unable to drive, the circuit court determined, and we agreed, that he had suffered substantial and actual prejudice as a result of the post-hearing delay.[18]

Conversely, in *Straub*, which was decided after *Staffileno*, we found the driver had not been actually and substantially prejudiced such that the post-hearing delay amounted to a due process violation.[19] In that case, Mr. Straub argued that he was prejudiced by an eleven-month post-hearing delay because he had been employed as a pharmaceutical sales representative and his employer had regularly issued notices of potential layoffs.[20] Though Mr. Straub was not actually laid off, he testified that he was interviewed by recruiters who would not continue his job search given that his driver's

---

[16] *Staffileno*, 239 W. Va. at 543, 803 S.E.2d at 513.

[17] *Id.*

[18] *Id.* at 543-44, 803 S.E.2d at 513-14.

[19] *Straub*, 239 W. Va. at 851, 806 S.E.2d at 775.

[20] *Id.* at 847, 806 S.E.2d at 771.

license could possibly be revoked.[21] The circuit court rejected that argument, finding that Mr. Straub had not demonstrated any prejudice from the post-hearing delay because he had suffered no change in circumstances and this Court agreed, distinguishing Mr. Straub's case from *Staffileno*.[22]

DMV argues that Mr. Derechin's circumstances are not at all like those examined in *Staffileno*. Specifically, DMV contends that Mr. Derechin was not required to drive for his work and there was no evidence that Mr. Derechin would have been terminated from his employment if required to comply with the statutory revocation requirements. DMV further asserts that this case is more like *Straub* because Mr. Derechin's job prospects in other states were mere speculation and he retained his employment as a bridge designer. And, Mr. Derechin had not shown any change in circumstances caused by the OAH's post-hearing delay.

We believe, in viewing the facts of this case, that there was sufficient evidence for the circuit court to have concluded that Mr. Derechin demonstrated a change in circumstances related to his divorce and ability to get to work assignments after the divorce. As noted by the circuit court, had the OAH issued the decision even a year after the hearing, it would have been but a minor inconvenience. In reaching the conclusion that the circuit court has not committed reversible error, we are mindful that our review is

---

[21] *Id.*

[22] *Id.* at 851, 806 S.E.2d at 775.

deferential. On these facts, there was sufficient evidence for the circuit court to analogize the case under *Staffileno* and make a finding of prejudice, just as there may have been sufficient evidence for the circuit court to have analogized the case under *Straub* and made a finding that there was no prejudice. When we find ourselves in such a predicament in deferential appellate review, only one thing is abundantly clear: there has been no abuse of discretion.

We likewise do not take issue with the circuit court's declination to afford much, if any weight, to Mr. Derechin's failure to seek mandamus relief. As we have found in the past, failure to seek extraordinary relief is not a waiver of any complaint to delay, but the circuit court has the discretion to consider it in examining whether there has been actual and substantial prejudice:

> although Appellee could have sought to hasten the Commissioner's decision by filing a petition for writ of mandamus in the circuit court, Appellee did not waive the argument that he was prejudiced by the delay in his circuit court appeal of the revocation order. Despite the availability of extraordinary relief as a means of seeking the issuance of delayed decisions, a party whose driver's license has been revoked should not have to resort to such relief to obtain a final decision by the Commissioner within a reasonable period of time following the administrative hearing. By the same token, when a party avers that his due process rights have been violated by a delay in the Commissioner's decision—that is, that he has suffered actual and substantial prejudice from the delay—but elects not to seek mandamus relief, the reviewing court may consider this fact in determining whether any such prejudice has occurred . . . .
>
> To be clear, a party who elects not to seek mandamus relief but who, instead, raises the delay issue for the first time on

appeal to the circuit court, does so at his peril. The reviewing court is free to consider the aggrieved party's failure to pursue a ruling as a factor in determining whether he has suffered actual and substantial prejudice as a result of the delay.[23]

We thus concluded in *Staffileno* that the reviewing court may give substantial or no weight to a party's failure to seek mandamus relief.[24] Along the same lines, because DMV argues that it too is prejudiced by OAH's delay, it could have attempted to seek relief in mandamus and did not, and it too could have filed a motion sooner than three years post-hearing asking for a decision.[25] If a driver is dangerous, such that DMV's mission compelled it to keep that driver off the roads and the OAH's delays compromised its ability to accomplish that mission, one would assume DMV would prioritize that case by making extraordinary efforts to ensure OAH issued a timely decision through use of mandamus, or, at least a motion to OAH for decision sooner than three years after the hearing. In waiting three years to file a motion for decision then claiming prejudice by OAH's delay because it was deprived of the ability to revoke Mr. Derechin's license, it is

---

[23] *Staffileno*, 239 W. Va. at 545, 803 S.E.2d at 515 (quoting *Miller*, 229 W. Va. at 72 n.7, 803 S.E.2d at 40 n.7).

[24] *Staffileno*, 239 W. Va. at 545, 803 S.E.2d at 515.

[25] At the hearing, DMV expressed some concern over its ability to seek mandamus against OAH without permission of the Department of Transportation (DOT) because DMV and OAH are both arms of the DOT. But it noted that it had considered mandamus relief as an option and simply had not explored what it would take to make it work. *See Miller*, 229 W. Va. at 72 n.7, 726 S.E.2d at 40 n.7 (quoting Syl. Pt. 2, in part, *Kanawha Valley Transp. Co. v. Pub. Serv. Comm'n*, 159 W. Va. 88, 219 S.E.2d 332 (1975)) ("[I]f a decision is unduly delayed a proceeding in mandamus may be instituted to compel a decision but not how to decide.").

apparent that DMV did not prioritize Mr. Derechin as one such driver that needed removed from the roadways with all expediency for the protection of the public.

In performing the balancing test here, the circuit court took evidence regarding the reasons for the delay – specifically that OAH's backlog of cases was dire and compounded by staffing issues, but that OAH was taking steps to ameliorate it – and found they were insufficient to justify a near four-year delay. What the circuit court did not hear was that there were some circumstances specific to Mr. Derechin's case that could have caused it to languish for almost four years without a decision. And, the circuit court noted that although DMV had sent a letter three years after the hearing asking for a decision, it had not sought mandamus relief. The circuit court would have been hard-pressed to excuse such an extensive delay by DMV's proffer that there was simply a huge backlog of cases stymied further by staffing issues, and we have not been presented with any justification to disturb the circuit court's findings in this regard.

Finally, we address DMV's argument that it "has no control" over OAH,[26] and its prejudice is not adequately considered either in this case or in any case since

---

[26] As we have previously explained,

[P]rior to 2010, the administrative hearing process was under the control of DMV. *See* W. Va. Code § 17C-5C-5(a) (Repl. Vol. 2013) (2010) (recognizing the "transition of the administrative hearing process from the Division of Motor Vehicles to the Office of Administrative Hearings"). In 2010, "[t]he Office of Administrative Hearings [was] created as a separate operating agency within the Department of Transportation." W. Va. Code § 17C-5C-1(a) (2010) (Repl. Vol. 2013).

15

*Staffileno*. DMV makes no secret that it wants *Staffileno* overturned. As noted in the circuit court's order, DMV's argument before it was not aimed at analogizing or distinguishing the law as it currently sits but at advocating for a change in the law. DMV has not advanced any arguments that have not already been heard and rejected by this Court several times over. In continuing to advance its agenda to modify *Staffileno* because it punishes DMV for the dilatory practices of OAH, DMV has a mistaken perspective. We do not permit the reversal of revocations for OAH's post-hearing delays to *punish* the DMV for OAH's delay, but to *protect* the due process rights of drivers. As we have held, "[a] driver's license is a property interest and such interest is entitled to protection under the Due Process Clause of the West Virginia Constitution."[27] Though prejudice is not presumed by the length of delay alone, when OAH takes nearly *four years* to issue a decision, the odds of actual prejudice certainly increase the longer these drivers are left in limbo and must put their life decisions and career moves on hold. That delay may not be placed squarely on the shoulders of DMV, but it certainly is not placed on the shoulders of the driver. While DMV's laudable purpose is "to protect innocent persons by removing intoxicated drivers from the public roadways as quickly as possible,"[28] DMV is not the party with a property interest at stake protected by the Due

---

*Staffileno*, 239 W. Va. at 541 n.2, 803 S.E.2d at 511 n.2.

[27] Syl. Pt. 2, *Straub* (quoting Syl. Pt. 1, *Abshire v. Cline*, 193 W. Va. 180, 455 S.E.2d 549 (1995)).

[28] Syl. Pt. 3, in part, *In re Petition of McKinney*, 218 W. Va. 557, 625 S.E.2d 319 (2005).

16

Process Clause. So, we have not been presented with any new argument that would persuade us to overturn *Staffileno*.

Having concluded that the circuit court did not abuse its discretion in finding that Mr. Derechin suffered actual and substantial prejudice and affirming the circuit court's order in that respect, we need not examine DMV's second assignment of error relating to the merits of the revocation as the prejudice finding is dispositive. We turn instead to DMV's argument that the circuit court inappropriately assessed fees to DMV.

**B.    *Assessment of Fees***

After concluding that Mr. Derechin was actually and substantially prejudiced by the post-hearing delay, the circuit court further found that Mr. Derechin should not bear the costs of the action, citing the overall delay. Though Mr. Derechin's appeal to the circuit court cites the two- and one-half-year delay in convening the hearing, from our review of the record, Mr. Derechin clarified that his position was that he was prejudiced by OAH's post-hearing delay, not a pre-hearing delay. No evidence was taken on pre-hearing delay, no argument was had on pre-hearing delay, and the circuit court's order makes no analysis of pre-hearing delay other than in the assessment of costs and attorney fees, focusing instead on post-hearing delay.[29] Nevertheless, even if

---

[29] As we have previously discussed, the analysis differs in pre-hearing delay cases and post-hearing delay, the former asking whether the driver was prejudiced in his or her ability to defend and the latter asking whether the driver has suffered a change in

17

we presume that the "overall delay" included both the pre-hearing continuances that delayed adjudication and the post-hearing delay awaiting decision of the OAH, assessment of costs and fees against DMV was not supportable on these facts.

In awarding Mr. Derechin costs and attorney fees, the circuit court relied on this Court's holding in *Reed v. Conniff*, in which we directed an award of attorney fees stating:

> [W]e further find that the cumulative effect of the multiple continuances and overall delay in this matter, while not prejudicial to Conniff's defense, warrants an award of attorney fees and costs and therefore remand to the circuit court for a determination as to the reasonable amount of such fees and costs.[30]

In *Conniff*, we were examining a *pre-hearing* delay for multiple continuances, none of which were attributable to the driver. Three of the continuances in that case were due to DMV's mishandling of the case "which in fairness ought to be routine for that agency" and one of the continuances was due to the hearing examiner's illness.[31] In *Conniff*, we did not find that the driver had been prejudiced because the continuances did not impede his defense, but, given that the proceedings had been so protracted by DMV's cumulative

---

circumstances amounting to actual and substantial prejudice. *See Staffileno*, 239 W. Va. at 543, 803 S.E.2d at 513 ("The issue of a party's ability to mount a defense is relevant when there is a substantial delay in holding an actual hearing. . . . In the context of a delay in issuing an order after a hearing has been held, the issue of prejudice necessarily involves prejudice to a party that occurred after the hearing was held.").

[30] 236 W. Va. 300, 302, 779 S.E.2d 568, 570 (2015).

[31] *Id.* at 309, 779 S.E.2d at 577.

18

continuances, this Court awarded him attorney fees and costs.[32] That holding was, in part, aimed at addressing DMV's seeming position in that case that "drivers may be held captive by cumulative continuances into perpetuity insofar as such continuances are grounded in ostensible 'good cause.'"[33]

This case presents several glaring issues illustrating why *Conniff* may not be appropriately applied in this context. First, as noted, Mr. Derechin did not raise a pre-hearing delay, nor did the circuit court make any findings that Mr. Derechin had been prejudiced by a pre-hearing delay. Under *Conniff*, a finding of no prejudice, in and of itself does not preclude an award of attorney fees and costs, but in *Conniff*, the driver was blameless for the pre-hearing delays. Here, two of the four pre-hearing continuances were attributable to Mr. Derechin's requests, one was due to OAH's scheduling error, and one was requested by DMV. DMV's one continuance was due to Officer Lightner's last minute childcare issues, not dilatory practices on behalf of DMV as in *Conniff*. There has been no evidence presented that DMV is responsible, even indirectly, for the other three continuances. So, the circumstances simply do not support an award of costs and attorney fees.

Second, delays may be attributable to DMV at the pre-hearing stage through DMV's own conduct (such as seeking continuances) in a way that is not

---

[32] *Id.* at 308-09, 779 S.E.2d at 576-77.

[33] *Id.* at 307, 779 S.E.2d at 575.

attributable to DMV *post*-hearing when both parties are awaiting decision from OAH. The circuit court's order does not reflect any affirmative conduct of DMV post-hearing that would have warranted an award of attorney fees and costs under *Conniff*. For those reasons, we conclude that the circuit court's award of attorney's fees and costs to Mr. Derechin was error, and we reverse that portion of the circuit court's order.

## IV. CONCLUSION

For the reasons set forth above, we affirm, in part, and reverse, in part, the February 4, 2020 order of the Circuit Court of Kanawha County. We remand this case to the Circuit Court of Kanawha County for the limited purpose of entering a new order with regard to the award of attorney fees and costs comporting with this opinion.

Affirmed, in part; reversed, in part, and remanded.